

July 27, 2022

**VIA ECF**
The Honorable Katherine Polk Failla
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007



Re:     *United States v. Purificacion Cristobal*, 20-CR-463

Dear Judge Failla:

We file this pre-motion conference letter on behalf of defendant Purificacion Cristobal because it has recently come to light that evidence critical to Dr. Cristobal's defense was not preserved by the Government. Specifically, no text messages between Agent Deftereos, the lead investigator on Dr. Cristobal's case, and CS-1, the confidential source who posed as a patient at Dr. Cristobal's office, have been preserved. Even though Dr. Cristobal had already been charged by the time Deftereos retired and it should have been readily apparent that his phone contained written communications with CS-1, the DEA wiped Deftereos's phone clean when he retired.

The Government has also confirmed that no messages were preserved from CS-1's phone, including text messages between CS-1 and Deftereos and text messages between CS-1 and members of Dr. Cristobal's office staff in CS-1's informal role as a "security guard" at Dr. Cristobal's office. While we have "met and conferred" with the Government about this discovery issue and the Government has confirmed that the text messages were not preserved, we were unsuccessful in resolving what, if any, remedy would be appropriate for the Government's failure to persevere this important evidence. We respectfully seek a conference to address whether the defense can brief issues arising out of the destruction of this critical evidence in advance of trial.

1. Legal Standards

The Government has a duty to preserve discoverable evidence, and to make such evidence available to criminal defendants pursuant to Federal Rules of Criminal Procedure 16 and 26.2, 18 U.S.C. § 3500 and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. When the destruction of such evidence occurs, the Government's "loss of evidence may deprive a defendant of the right to a fair trial," and "[w]hether that loss warrants sanctions depends on the Government's culpability for the loss and its prejudicial effect." *United States v. Rahman*, 189 F.3d 88, 139 (2d Cir. 1999). There are a range of potential sanctions available for the loss of such evidence, ranging from dismissal of the Indictment, to an adverse inference instruction, to striking the witness's testimony under the Jencks Act.

The Honorable Katherine Polk Failla                                                                      Page 2

To establish that the Government's failure to preserve evidence rises to the level of a constitutional violation the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 489 (1984).  If the value of the evidence is only potentially exculpatory or inculpatory, the defendant bears the burden of showing that the police acted in bad faith in losing or destroying the evidence.  *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

To establish an entitlement to a spoliation charge, a party must show: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks omitted).  An adverse inference instruction "may be appropriate in some cases involving the negligent destruction of evidence." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002).  Considering the materiality of the evidence that was destroyed, we request that the defense be permitted to brief the issue of the appropriate remedy in advance of trial, as dismissal of the Indictment may be warranted.

**2.  Materiality of the Evidence**

CS-1's credibility is of the utmost importance to this case.  While much of CS-1's "controlled patient visits" were recorded via video and audio, the audio is inaudible at times and the camera angle makes it difficult to see critical events, including payments to the receptionists, who are alleged to be Dr. Cristobal's co-conspirators.  CS-1's observations and credibility will thus be critical at Dr. Cristobal's trial to fill in the missing gaps in the audio and video.

It is indisputable that text messages between Deftereos and CS-1 existed.  Deftereos informed the prosecutors that he "instructed CS to communicate via cell from time-to-time." 3501-001 at 2.  An August 29, 2019 DEA-6 further describes text messages from CS-1.  Chats amongst agents (preserved on other phones, not Deftereos's), show that CS-1 provided text updates to Deftereos while waiting to see Dr. Cristobal.  *See*, *e.g.*, 35001-014 ("CS next").  The Government was thus on notice that these messages should have been preserved to make them available to defense counsel for cross-examination.  *See*, *e.g.*, United *States v. Suarez*, No. CRIM.A. 09-932 JLL, 2010 WL 4226524, at *5 (D.N.J. Oct. 21, 2010) ("The purpose of the Jencks Act and Rule 26.2 is to permit defense counsel to have the materials necessary to impeach a Government witness."); *id*. ("what the cooperating witness may have said to the agents during the crucial meetings and whether he abided by the agents' instructions are fertile ground for cross examination.")  Nonetheless, the DEA wiped Deftereos's phone clean on August 27, 2020, less than two months after Dr. Cristobal was arrested, when the need for such messages at a potential trial was obvious.

In addition to wiping Deftereos's phone, the Government also failed to preserve any phone records or text messages from CS-1's phone.  It is clear that CS-1 texted Deftereos, and he

also called and texted with members of Dr. Cristobal's office staff, including in CS-1's role as a "security guard" at the office. According to CS-1, he advised Deftereos about his texts with the office staff. Since CS-1 was a paid informant when interacting with Deftereos, Dr. Cristobal and members of her office staff at the direction of the Government, these communications were in the Government's control, and should have been preserved.

The failure to preserve these text messages resulted in the destruction of evidence that is unavailable through other means and would have been exculpatory for the defense. The very few text messages that appear to have been sent to other members of the investigation team show that agents were well aware of the exculpatory value of the text messages before they were destroyed. For example, a screenshot of a partial text exchange between CS-1 and Deftereos was sent to other agents on May 19, 2020 showing CS-1 stating, "Yo this doctor is on a discharging spree," and Deftereos responding, "She's still getting rid of people?" 3501-014 at 96. This shows that both Deftereos and CS-1 were aware of Dr. Cristobal discharging patients, which directly undercuts the notion that she was running a "pill mill." The text message also shows Deftereos's instructions to CS-1, though it cuts off any responses from CS-1. *See id*. ("talk a bit, remind those that you have a relationship with that this is a Cash visit. Don't get thrown out but be annoyed.") This shows that Deftereos's instructions would have provided critical context to CS-1's actions that can be observed on the video, and important material for cross-examination.

The text messages related to CS-1's role as a "security guard" would also show the number of times CS-1 spent time at Dr. Cristobal's office outside of the controlled patient visits. Despite defense counsel's discovery requests, there appear to be no other records to establish the number, duration or nature of these visits, and the text messages would have provided the best available evidence of these contacts. The premise of the Government's case is that Dr. Cristobal prescribed CS-1 oxycodone without a sufficient examination, but every communication she had with him would have informed her view of him. The videos and audio recordings thus necessarily present an incomplete picture of Dr. Cristobal's knowledge of and interactions with CS-1. The failure to preserve CS-1's contemporaneous communications with Deftereos and Dr. Cristobal's office staff about these additional visits therefore destroyed evidence that is critical to Dr. Cristobal's defense and cannot be replaced.

These texts would have also been important for impeachment, as it appears that both CS-1 and Deftereos have provided misleading information about these visits. While in April 2022 they told prosecutors that CS-1 only served as a security guard "on a single occasion," *see*, Dkt. No. 64, Gov. Opp. Br. at 39, a recently-produced email shows that on February 26, 2020, Deftereos previously advised the Government that Dr. Cristobal's "office has been utilizing our CS for assistance and security since the beginning of this month," suggesting the visits happened more than once. 3501-032. Further, Receptionist 2 and CS-1 can be heard on video joking about CS-1 having been "kind of sort of an employee" at the practice. That CS-1 and Deftereos both appear to have recently misrepresented the nature and scope of the "security guard" visits suggests that there might have been bad faith in failing to preserve CS-1's text messages related this issue. Further discovery and briefing are warranted.

In light of the materiality of the evidence that was not preserved, we request a pre-motion conference to discuss whether the defense can brief the issue in advance of trial.

Sincerely,

/s/ Kristen M. Santillo
Kristen M. Santillo

```
The Court is in receipt of Defendant Purificacion Cristobal's above pre-
motion letter.  Consistent with the current pre-trial briefing schedule,
Dr. Cristobal shall file her opening motion addressing the issues
identified above on or before August 5, 2022.  (See Dkt. #59).  The
Government shall file its response to the motion on or before August 12,
2022.  The Court intends to resolve the motion at the final pretrial
conference scheduled for August 17, 2022.

The Clerk of Court is directed to terminate the motion at docket entry
79.



Dated:   July 28, 2022                 SO ORDERED.
         New York, New York
```

*[Signature: Katherine Polk Failla]*

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE