UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

PURIFICACION CRISTOBAL,

Defendant.

20 Cr. 463-1 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendant Purificacion Cristobal, who is currently housed at the Federal Correctional Institution in Marianna, Florida ("FCI Marianna"), has applied for compassionate release, in the form of a release to home detention, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Government opposes the motion.  As set forth in the remainder of this Order, the Court denies Dr. Cristobal's motion.

## BACKGROUND[1]

### A.    Factual Background

Dr. Cristobal is a nurse practitioner who operated, and was the sole medical professional at, the Kamehameha Health and Wellness Clinic in the Bronx, New York.  (PSR ¶ 10).  From at least June 2019, until her arrest on July 8, 2020, Dr. Cristobal regularly diverted large quantities of oxycodone to patients without legitimate medical need, without conducting physical

---

[1]    In this Order, the Court refers to Dr. Cristobal's Revised Presentence Investigation Report as "PSR" (Dkt. #206); to her motion for compassionate release as "Def. Br." (Dkt. #231); to her proposed release plan as "Release Plan" (Dkt. #232); to the Government's opposition submission as "Gov't Opp." (Dkt. #245); and to Dr. Cristobal's reply submission as "Def. Reply" (Dkt. #248).

In light of the specifics of Dr. Cristobal's claims for compassionate release, the Court obtained copies of her medical records from the Bureau of Prisons (the "BOP"), to which it refers as necessary using the convention "Medical Records dated [date]."

examinations, and despite clear signs that many of her patients were drug dealers or drug addicts. (*Id.* ¶¶ 11-16).

Dr. Cristobal charged certain of her patients for controlled substances on a per-prescription basis, and sometimes withheld prescriptions based on patients' inability to pay, rather than on changed medical circumstances. (PSR ¶¶ 16-19). She also conspired with others to divert oxycodone, including several of the receptionists she employed, a pharmacist who ran a pharmacy across the street from her clinic, and at least one patient who recruited others to her practice in exchange for medically unnecessary prescriptions. (*Id.* ¶¶ 20-24).

During the relevant time period, Dr. Cristobal prescribed a combination of oxycodone, alprazolam (known commonly as Xanax), and Adderall for many of her patients, despite Centers for Disease Control and Prevention ("CDC") guidelines cautioning practitioners against prescribing oxycodone and Xanax together. (PSR ¶¶ 13-14). Between June 2019 and July 8, 2020, Dr. Cristobal wrote 1,582 oxycodone prescriptions for hundreds of patients. (*Id.* ¶ 25). During this same period, Dr. Cristobal wrote 2,305 Xanax prescriptions and 1,077 Adderall prescriptions. (*Id.*). On several occasions, Dr. Cristobal prescribed the highest dose in which those drugs were available. Many of her patients resold their pills after receiving the prescriptions. (*Id.* ¶¶ 16, 22).

B.    **Procedural Background**

1.    **The Complaint and the Indictment**

On July 2, 2020, a sealed complaint was filed charging Dr. Cristobal with conspiracy to distribute and possess with intent to distribute oxycodone, in violation of 21 U.S.C. § 846. (Dkt. #1). Dr. Cristobal was arrested on July 8, 2020, presented in this District that same day, and released on bail conditions. (Dkt. #4-5). On September 3, 2020, the Grand Jury returned a one-count indictment charging Dr. Cristobal with the same offense. (Dkt. #9).

A bail review hearing was held on December 2, 2021, after the Court obtained information indicating that Dr. Cristobal had attempted to apply for a replacement passport from the State Department, and then made false statements to the Court regarding her possession of a passport. (Dkt. #42, 45 (transcript)). As a result of the proceeding, Dr. Cristobal was placed on home detention with electronic monitoring. (Dkt. #43).

2.    **The Superseding Indictment and the Trial**

On July 19, 2022, the Government obtained a superseding indictment, S1 20 Cr. 463 (the "Indictment"), charging Dr. Cristobal in eight counts, comprising the earlier narcotics conspiracy count plus seven counts of distribution and possession with the intent to distribute oxycodone, in violation of 21 U.S.C. § 841. (Dkt. #77). The Court arraigned Dr. Cristobal on the Indictment at a court proceeding held on July 21, 2022. (Minute Entry for July 21, 2022).

After extensive pretrial litigation, including a motion to suppress and a motion to dismiss the Indictment, trial began against Dr. Cristobal on August 22, 2022.  (Dkt. #155 (transcript)).  During the trial, the Government called nine witnesses, including cooperating witnesses, former employees of Dr. Cristobal's clinic, law enforcement agents, and an expert in pain medicine.  The Government also introduced recordings of meetings that Dr. Cristobal had with a confidential informant and with an undercover agent who posed as patients; more than 600 patient files seized from Dr. Cristobal's clinic; and prescription data maintained by the New York Bureau of Narcotic Enforcement (the "BNE"). (*See* Dkt. #155, 157, 159, 161, 163, 165, 167, 169, 171, 173, 175 (trial transcripts)).  On September 7, 2022, the jury returned a verdict convicting Dr. Cristobal of Counts One, Six, and Seven of the Indictment, and acquitting her of the other counts.  (Dkt. #147 (verdict form)).

### 3.    The Sentencing

Sentencing for Dr. Cristobal took place on January 19, 2023.  (*See* Dkt. #207 (sentencing transcript ("Sent. Tr.")); Dkt. #202 (judgment)).  In anticipation of sentencing, the Probation Office prepared a Presentence Investigation Report that calculated Dr. Cristobal's exposure under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") to be 188 to 235 months' imprisonment.  (PSR ¶¶ 30-40, 80).  It recommended an aggregate term of 120 months' imprisonment.  (PSR, Sentencing Recommendation).  Dr. Cristobal disputed the Probation Office's Guidelines calculation and sought a sentence of probation or home detention.  (Dkt. #192, 197).  The Government

4

agreed with the Guidelines calculations of the Probation Office, but sought a non-Guidelines sentence of 144 months' imprisonment. (Dkt. #194, 198).

The Court began the sentencing proceeding by reviewing the parties' factual and legal disputes and by obtaining clarification regarding certain statements in the sentencing submissions. (Sent. Tr. 5-33). Thereafter, counsel for each side was given extended opportunities to make oral sentencing presentations, and Dr. Cristobal was permitted to speak as well. (*Id.* at 34-72). After taking a recess to consider the parties' arguments, the Court then imposed sentence. As a first step, the Court resolved the Guidelines disputes in a manner different from those suggested by the parties, making a conservative estimate that only one-third of the oxycodone prescriptions at issue "were prescribed by the defendant … without a legitimate medical purpose and outside of the usual course of her professional practice." (*Id.* at 78). The Court declined to impose a "stash house" enhancement, but did impose a four-level leadership role enhancement. (*Id.* at 78-79). The Court's calculations yielded a Guidelines range of 188 to 235 months' imprisonment. (*Id.* at 79).

The Court varied significantly below the applicable Guidelines range on account of Dr. Cristobal's age and health conditions. Ultimately, it determined to impose concurrent terms of 84 months' imprisonment on the counts of conviction, reasoning as follows:

> Dr. Cristobal, I realize — and your discussion with me this afternoon reminded me — how much effort you put into your education. And I will accept that that education was designed to put you in a position to help

5

people. And I will even accept that your goal at the time that you were getting that education was to help people. You referred to it as your goal or your quest to help people.

That's why I find it — I was going to say it was such a disappointment, but the actual answer is it's criminal conduct; that so much of what you did at your clinic during the period of the charged conspiracy only served to harm people. I have reviewed the evidence at trial in connection with the Rule 29 motion. I've just reviewed it now in discussing the guidelines calculations. But for most, if not all, of the period charged in the indictment, you gave drugs to anyone who wanted them. You did not care how they presented, whether they were an addict, whether they — whether they were reselling it. You didn't care if there was no basis to prescribe these highly, highly addictive prescriptions. You didn't bother to check if your clients needed them, even when all signs pointed to them not needing them.

You proceeded in the same way, even when you heard that people were selling drugs. You implemented a series of policies that served only to disguise, to cover up your tracks. And those include the dealings with Mr. Ohaeri and the ridiculous document you had your clients sign [confessing "ENTRAPMENT," in advance, if the client later spoke to "Local, State, County, and Federal Agencies" about Dr. Cristobal's practice].

No matter what you've said to me today, I find — and the evidence demonstrates without a doubt — that you participated in a sustained course of criminal conduct for a year.

*** 

There is absolutely a need for deterrence in this case; although I will acknowledge that it is general, more than specific. There is a need to recognize the seriousness of this conduct and the seriousness of the offense. And it's something I don't think Dr. Cristobal has yet done.

I am, however, also aware of her age and her physical conditions. And I am tempering the sentence I would otherwise impose based on my concerns about her age

6

> and her health.  I am varying downward to a term of 84
> months' imprisonment, followed by a term of three years
> of supervised release.

(Sent. Tr. 79-81).

Dr. Cristobal surrendered to begin serving her sentence on or about

April 19, 2023, and her current projected release date is October 31, 2028.

### 4.    The Appeal and the Amendment 821 Motion

Dr. Cristobal appealed from her conviction and sentence.  (Dkt. #203

(notice of appeal)).  On April 8, 2024, the Second Circuit affirmed Dr.

Cristobal's conviction and sentence by summary order.  (Dkt. #229 (mandate)).

In motion received by the Court on May 30, 2024, Dr. Cristobal moved

for a sentence reduction in light of Amendment 821 to the Guidelines,

pursuant to 18 U.S.C. § 3582(c)(2).  (Dkt. # 230).  The Court found that Dr.

Cristobal was ineligible for a reduction in sentence pursuant to that

amendment, and denied her motion by orders dated July 8, 2024.  (Dkt. #235,

236).

### 5.    The Instant Motion

Dr. Cristobal filed a *pro se* motion for compassionate release pursuant to

18 U.S.C. § 3582(c)(1)(A)(i) that was received by the Court on June 26, 2024.

(Dkt. #231-232).  In light of her failure to exhaust administrative remedies, the

Court denied her motion without prejudice to its renewal in an order dated

July 8, 2024.  (Dkt. #234).

By letter received July 31, 2024, Dr. Cristobal advised that she had

served a copy of her compassionate release motion on the Warden of her facility

(Dkt. #237); in a separate letter received on September 10, 2024, she advised the Court that more than 30 days had passed without receiving a response from the Warden (Dkt. #242).  By endorsement dated September 13, 2024, the Court set a schedule for the remaining briefing.  (Dkt. #243).  The Government filed its opposition to Dr. Cristobal's compassionate release motion on November 12, 2024.  (Dkt. #245).  Dr. Cristobal filed her reply submission on December 10, 2024.  (Dkt. #248).

## DISCUSSION

### The Court Denies Dr. Cristobal's Motion for Compassionate Release

**A.    Applicable Law**

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant.  A defendant may move under Section 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

When considering an application under Section 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v.

*Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary

order).  The Second Circuit has summarized the standards pursuant to which

district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can
> consider "the full slate of extraordinary and compelling
> reasons that an imprisoned person might bring before
> [it]."  *United States* v. *Brooker*, 976 F.3d 228, 237 (2d
> Cir. 2020).  But there are three requirements that must
> be satisfied before a court can grant such relief.  First,
> absent waiver or forfeiture by the government, an
> inmate must exhaust administrative remedies by
> requesting such relief from prison authorities.
> Specifically, an inmate may ask the sentencing court to
> consider reducing a sentence only "after the defendant
> has fully exhausted all administrative rights to appeal a
> failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the
> receipt of such a request by the warden of the
> defendant's facility, whichever is earlier."  18 U.S.C.
> § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7
> F.4th 120, 124 (2d Cir. 2021) (holding that the
> government may waive or forfeit the exhaustion
> requirement).  Second, a court must "consider[ ] the
> factors set forth in [18 U.S.C. §] 3553(a) to the extent
> that they are applicable."  18 U.S.C. § 3582(c)(1)(A); *see*
> [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir.
> 2021)].  Section 3553(a), in turn, lists numerous factors
> a court must review when imposing a sentence.  These
> include, as most relevant here, "the nature and
> circumstances of the offense and the history and
> characteristics of the defendant"; "the need for the
> sentence imposed ... to reflect the seriousness of the
> offense, to promote respect for the law, and to provide
> just punishment for the offense"; "the need for the
> sentence imposed ... to provide the defendant with ...
> correctional treatment in the most effective manner";
> and "the need to avoid unwarranted sentence
> disparities among defendants with similar records who
> have been found guilty of similar conduct."  18 U.S.C.
> § 3553(a).  Third, the inmate must demonstrate that his
> proffered circumstances are indeed "extraordinary and
> compelling" such that, in light of these § 3553(a) factors,

> a sentence reduction is justified under § 3582(c)(1)(A)
> and would not simply constitute second-guessing of the
> sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). The district court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

The Sentencing Commission amended the policy statement contained at U.S.S.G. § 1B1.13, effective as of November 1, 2023, in order to provide guidance as to what constitutes extraordinary and compelling circumstances in defendant-initiated (as distinguish from BOP-initiated) compassionate release requests. This amendment "as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release motion, however initiated." *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

As relevant here, courts may consider the age and medical circumstances of a defendant in several situations:

> (1)  <u>Medical Circumstances of the Defendant</u>. —
>
> (A)  The defendant is suffering from a terminal illness
> (i.e., a serious and advanced illness with an end-of-life
> trajectory). A specific prognosis of life expectancy (i.e.,
> a probability of death within a specific time period) is
> not required. Examples include metastatic solid-tumor
> cancer, amyotrophic lateral sclerosis (ALS), end-stage
> organ disease, and advanced dementia.
>
> (B)  The defendant is —
>
> (i)  suffering from a serious physical or medical
> condition,

(ii)    suffering from a serious functional or cognitive impairment, or

(iii)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C)  The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

\*\*\*

(2)   <u>Age of the Defendant</u>.—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b)(1)(A)-(C), (2).

In addition to the listed factual circumstances, the amended U.S.S.G. § 1B1.13 contains a catch-all provision that allows consideration of "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). Finally, while the amended policy statement confirms that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," it notes that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in

determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

As suggested by *Keitt*, the "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant." *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). Even if a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it still must then consider the Section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

## B.    Analysis

### 1.    Dr. Cristobal Has Not Demonstrated an Extraordinary and Compelling Reason Warranting Her Release

The Court acknowledges that Dr. Cristobal is 77 years old, and that she has cited age as one of her bases for compassionate release. Dr. Cristobal does not satisfy the requirements of U.S.S.G. § 1B1.13(b)(2), inasmuch as she has not served the requisite portion of her sentence. Moreover, as the Government observes (Gov't Opp. 2), the Court already accounted for Dr. Cristobal's age and physical conditions in imposing a sentence substantially below the correctly calculated Guidelines range (Sent. Tr. 81). However, to the extent that Dr. Cristobal's medical conditions are caused or exacerbated by her age, the Court will consider that fact in its analysis.

Dr. Cristobal argues that her current medical conditions — including interstitial lung disease, chronic neck and shoulder pain, occipital headaches, spine misalignment, shortness of breath, dry cough, malaise, gastroesophageal reflux disease, anxiety, dental issues, gastric bleeding from stomach ulcers, hypertension, and rheumatoid arthritis — warrant compassionate release. (Def. Br. 6-8; Def. Reply 1-2). The Court has reviewed with care medical records obtained from the BOP concerning Dr. Cristobal's treatment while in BOP custody. On the whole, the Court believes that the BOP has responded promptly and appropriately to Dr. Cristobal's medical conditions. To begin, the Court notes that BOP medical staff have been attentive to medical records generated prior to Dr. Cristobal's surrender date. They have worked to address Dr. Cristobal's pre-existing medical conditions and changes to those conditions, as well as occasional flare-ups that have occurred while she has been in BOP custody. (*See, e.g.*, Medical Records dated May 29, 2024, and November 14, 2024 (reviewing then-current medical conditions and prescriptions); *see also* Medical Records dated January 2, 2025 (reviewing recent x-ray panel)). Dr. Cristobal's records are also replete with her own requests to receive test results so that she can review them personally.

In short, the Court finds that Dr. Cristobal has failed to demonstrate that she is suffering from a "terminal illness" as defined in U.S.S.G. § 1B1.13(b)(1)(A); or a "serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," *id.* § 1B1.13(b)(1)(B), or "a medical

13

condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C).  In short, while the Court recognizes Dr. Cristobal's age and medical conditions — and, indeed, accounted for them previously — nothing in the record suggests that Dr. Cristobal cannot adequately care for herself or is receiving substandard care from the BOP.[2]

## 2. The Section 3553(a) Factors Counsel Against a Reduction in Sentence

Even were the Court to have found that Dr. Cristobal's proffered bases for compassionate release amounted to "extraordinary and compelling," it would still deny her motion after considering the factors set forth in 18 U.S.C. § 3553(a).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).  For more than one year, Dr. Cristobal flooded a Bronx neighborhood with illegal controlled substances by writing oxycodone prescriptions without determining medical need; she did so in the face of numerous red flags that her patients were either using the

---

[2]    On the specific issue of Dr. Cristobal's disagreement with the course of treatment provided by the BOP's dental clinicians, the Court does not believe that such a disagreement rises to the level of an extraordinary and compelling reason warranting compassionate release.  Given the age of Dr. Cristobal's dental records, however, the Court has reached out to BOP's Northeast Regional Office, requesting that Dr. Cristobal receive additional dental care in the near term.

pills she prescribed to feed their own addictions, or reselling them on the streets to other addicts. Dr. Cristobal used her medical training and licensure to hurt, rather than help, people, and did so to line her own pockets. To this day, Dr. Cristobal fails to appreciate the gravity of her misconduct. Despite this lack of contrition, the Court varied downwardly significantly at sentencing, specifically acknowledging Dr. Cristobal's age and medical conditions. A further reduction in sentence would contravene the Section 3553(a) factors that this Court strove so carefully to balance at the original sentencing.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Purificacion Cristobal's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is directed to mail a copy of this Order to Dr. Cristobal at the following address:

> Purificacion Cristobal,
> Reg. No. 88061-054
> FCI Marianna
> Federal Correctional Institution
> P.O. Box 7007
> Marianna, FL 32447

SO ORDERED.

Dated:    February 18, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

15